UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEVERLY CAGE, as next of friend of minor JOHN DOE,<br><br>      Plaintiff,<br><br>vs.<br><br>KIPP ACADEMY CHICAGO & DONNELL MCDAVID,<br><br>      Defendants. | Case No. 24-CV-966 |

## **COMPLAINT**

NOW COMES the Plaintiff, BEVERLY CAGE, as next of friend of minor JOHN DOE, by and through her attorneys, Blake W. Horwitz and Hayden L. Dinges from The Blake Horwitz Law Firm, Ltd., pursuant to this Complaint at Law, against the above-named Defendants KIPP ACADEMY CHICAGO & DONNELL MCDAVID, and states as follows:

### I. JURISDICTION

1. The jurisdiction of the Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

### II. PARTIES

2. BEVERLY CAGE is a resident of the State of Illinois, and a citizen of the United States.

3. JOHN DOE is a minor child.

4. BEVERLY CAGE is JOHN DOE's mother.

5. KIPP ACADEMY CHICAGO ("KIPP") is a public charter school in Chicago's Austin neighborhood serving students between fifth and eighth grade.

6. KIPP is a Chicago Public School.

7. KIPP is located at 4818 W. Ohio Street, Chicago, IL 60644.

8. At all relevant times, DONNELL MCDAVID was an Assistant Principal and teacher at KIPP.

9. At all relevant times, Cory Washington was the Head of Schools for KIPP.

10. At all relevant times, Camille Allen was the Principal of KIPP.

11. At all relevant times, Seth Delorme was an Assistant Principal and teacher at KIPP.

12. At all relevant times, Washington, Allen, Delorme, and MCDAVID (collectively, "KIPP Employees") were employed by KIPP.

13. At all relevant times, KIPP Employees were acting in their capacity as KIPP employees.

14. At all relevant times, KIPP Employees were acting on behalf of KIPP.

15. At all relevant times, KIPP Employees were acting in the scope of their employment with KIPP.

### III. FACTS

16. Between 2022 to 2024, JOHN DOE was enrolled as a middle school student at KIPP.

17. In addition to JOHN DOE, MS. CAGE has two daughters who attend, or once attended, KIPP.

18. While JOHN DOE was enrolled as a student at KIPP, other students regularly bullied JOHN DOE for having two mothers and not having a father.

19. JOHN DOE has asthma.

20. JOHN DOE has a learning disability.

21. JOHN DOE has an anxiety disorder.

22. At all relevant times, KIPP Employees knew that JOHN DOE had asthma, a learning disability, and an anxiety disorder.

23. At all relevant times, KIPP, through its agents, knew that JOHN DOE had asthma, a learning disability, and an anxiety disorder.

24. JOHN DOE was provided an Individualized Educational Program "IEP" at KIPP.

25. JOHN DOE was provided an IEP by KIPP because of his learning disability and anxiety disorder.

26. While a student at KIPP, JOHN DOE was required to follow the orders and commands of KIPP teachers and administrators.

27. As a student at KIPP, JOHN DOE was required to follow the orders and commands of KIPP Employees, including DEFENDANT MCDAVID.

28. In Spring of 2022, JOHN DOE was a sixth-grade student at KIPP.

29. In Spring of 2022, KIPP Employees engaged in a practice where they would leave students alone and unattended in classrooms for an extended period of time as a form of punishment.

30. KIPP allowed its employees and/or agents to engage in a practice where they would leave students alone and unattended in classrooms for an extended period of time as a form of punishment.

31. In Spring of 2022, there were at least two occasions when JOHN DOE was left alone in a classroom unattended for an extended period of time as a form of discipline by a KIPP teacher and/or administrator.

32. In Spring of 2022, there were at least two occasions where JOHN DOE was left alone in a classroom unattended for an extended period of time as a form of discipline by a KIPP Employee.

33. Around April 28, 2022, JOHN DOE was left alone in a classroom unattended for an extended period of time as a form of discipline by a KIPP teacher and/or administrator.

34. Around May 20, 2022, JOHN DOE was left alone in a classroom unattended for an extended period of time as a form of discipline by a KIPP teacher and/or administrator.

35. Both times JOHN DOE was left alone in a classroom unattended for an extended period of time in Spring of 2022, he was denied access to food, water, and the bathroom.

36. Around May 20, 2022, JOHN DOE notified his mother MS. CAGE that he had been left alone in a classroom unattended for an extended period of time as a form of discipline by a KIPP teacher and/or administrator.

37. On May 20, 2022, MS. CAGE sent Assistant Principal Delorme a text message notifying him that JOHN DOE has a "medical condition" and that his "being left alone in a classroom unattended" was unacceptable, dangerous, and a "DCFS matter."

38. In Fall of 2023, JOHN DOE was a seventh-grade student at KIPP.

39. On October 20, 2023, JOHN DOE was subject to bullying by another student in a classroom at KIPP.

40. In response to this altercation, Assistant Principal MCDAVID ordered JOHN DOE to read aloud in front of the class.

41. Because of his learning disability and anxiety disorder, JOHN DOE was afraid to read aloud in front of the class.

42. Assistant Principal MCDAVID knew that JOHN DOE had a learning disability and anxiety disorder which made it difficult for him to read aloud in front of the class.

43. Assistant Principal MCDAVID intended to embarrass JOHN DOE by making him read aloud in front of the class.

44. JOHN DOE eventually turned around to manage his anxiety and avoid seeing other students as he prepared to read aloud in front of the class and comply with Assistant Principal MCDAVID's command.

45. Assistant Principal MCDAVID stated to JOHN DOE in front of a class full of students that if he did not obey him, then the two could "step in the hallway and settle this right now."

46. Assistant Principal MCDAVID's statement to JOHN DOE to "step in the hallway and settle this right now" was a threat to commit violence against JOHN DOE.

47. JOHN DOE understood Assistant Principal MCDAVID's statement to "step in the hallway and settle this right now" as a threat to commit violence against JOHN DOE.

48. JOHN DOE was afraid that Assistant Principal MCDAVID would commit violence against him.

49. Assistant Principal MCDAVID then ordered JOHN DOE from the classroom into the hallway.

50. Assistant Principal MCDAVID then ordered JOHN DOE into another classroom that was unoccupied.

51. Assistant Principal MCDAVID ordered JOHN DOE to remain in the classroom alone.

52. Assistant Principal MCDAVID ordered JOHN DOE to remain alone in the classroom as a form of punishment.

53. Assistant Principal MCDAVID locked JOHN DOE in a classroom alone and unattended as a form of punishment.

54. When Assistant Principal MCDAVID ordered JOHN DOE to remain alone in the classroom, JOHN DOE did not have access to food or water.

55. When Assistant Principal MCDAVID ordered JOHN DOE to remain alone in the classroom, JOHN DOE was not allowed to use the bathroom.

56. JOHN DOE would have faced discipline by KIPP if he attempted to leave the classroom.

57. JOHN DOE would have faced discipline by KIPP Employees if he attempted to leave the classroom.

58. JOHN DOE would have faced discipline by Assistant Principal MCDAVID if he attempted to leave the classroom.

59. Assistant Principal MCDAVID left JOHN DOE alone and unattended in the classroom for over 30 minutes.

60. Assistant Principal MCDAVID left JOHN DOE alone and unattended in the classroom for over 45 minutes.

61. Assistant Principal MCDAVID left JOHN DOE alone and unattended in the classroom for over one hour.

62. Assistant Principal MCDAVID left JOHN DOE alone and unattended in the classroom for over one hour and 30 minutes.

63. Assistant Principal MCDAVID left JOHN DOE alone and unattended in the classroom for over two hours.

64. Assistant Principal MCDAVID left JOHN DOE alone and unattended in the classroom for over three hours.

65. JOHN DOE asked Assistant Principal MCDAVID to call his parents.

66. Assistant Principal MCDAVID never called JOHN DOE's parents.

67. For the duration that JOHN DOE was left alone and unattended in a classroom, he was not provided any water.

68. For the duration that JOHN DOE was left alone and unattended in a classroom, he was not provided any food.

69. For the duration that JOHN DOE was left alone and unattended in a classroom, he was not given any bathroom breaks.

70. For the duration that JOHN DOE was left alone and unattended in a classroom, the classroom was a cold temperature.

71. For the duration that JOHN DOE was left alone and unattended in a classroom, he was prohibited by Assistant Principal MCDAVID from leaving the classroom.

72. For the duration that JOHN DOE was left alone and unattended in a classroom, he was prohibited from calling his parents.

73. JOHN DOE did nothing to justify his detention in a classroom alone for a period beyond just a few minutes.

74. JOHN DOE did nothing to justify his detention in a classroom alone for a period beyond 15 minutes.

75. JOHN DOE did nothing to justify his detention alone in a classroom for a period beyond 30 minutes.

76. While he was alone in the classroom, JOHN DOE eventually urinated on himself because he was not allowed to use the bathroom.

77. JOHN DOE urinated on himself because he was scared Assistant Principal MCDAVID would cause him physical harm given his earlier comments to "step in the hallway and settle this right now."

78. JOHN DOE urinated on himself because he had been locked in that classroom alone for an unreasonably long extended period of time.

79. JOHN DOE did not want to urinate on himself during school or beyond.

80. JOHN DOE urinated on himself because he was too scared to ask to use the bathroom given Assistant Principal MCDAVID's prior threat of violence.

81. As a result of being left alone in the classroom, JOHN DOE missed one class.

82. As a result of being left alone in the classroom, JOHN DOE missed two classes.

83. As a result of being left alone in the classroom, JOHN DOE missed three classes.

8

84. As a result of being left alone in the classroom, JOHN DOE missed multiple classes.

85. Nobody from KIPP ever called MS. CAGE to inform her that JOHN DOE was in trouble at school.

86. Nobody from KIPP ever called MS. CAGE to inform her that JOHN DOE was being disciplined at school.

87. Nobody from KIPP ever called MS. CAGE to inform her that JOHN DOE had been left alone and unattended in a classroom.

88. While JOHN DOE was alone and unattended in the classroom, Assistant Principal MCDAVID entered another classroom full of students and at least one teacher and stated for all to hear that JOHN DOE only acts this way because "he has two moms."

89. While JOHN DOE was alone and unattended in the classroom, Assistant Principal MCDAVID disparaged JOHN DOE for having two mothers in front of other teachers and other students.

90. JOHN DOE's sister was a student in this classroom.

91. JOHN DOE's sister heard Assistant Principal MCDAVID state in front of a room full of students that JOHN DOE only acts this way because "he has two moms."

92. At some point, JOHN DOE was given permission to leave the classroom.

93. When MS. CAGE picked up JOHN DOE from KIPP after the school day on October 20, 2023, she smelled urine on him.

9

94. MS. CAGE asked JOHN DOE what had happened, and JOHN DOE told her that he was left alone and unattended in a classroom for an extended period of time and had peed himself.

95. On October 20, 2023, MS. CAGE sent an email to Mr. Washington, the Head of Schools for KIPP, asking for him to give her a call "about a situation with my child that has happened numerous of time at this point."

96. MS. CAGE's October 2023 email concerned the numerous occasions where JOHN DOE was left in a room alone and unattended as discipline.

97. On October 25, 2023, a meeting was held at KIPP with MS. CAGE, her wife, JOHN DOE, Principal Allen, Assistant Principal MCDAVID, and Head of Schools Washington to discuss the October 20, 2023 incident.

98. During this meeting, MS. CAGE expressed her concern and outrage over JOHN DOE being left in a classroom unattended for an extended period of time given his asthma and anxiety.

99. During this meeting, Head of Schools Washington stated, "I agree with you 100% that students should not be left unattended."

100. During this meeting, Head of Schools Washington stated, that Assistant Principal MCDAVID was "not using the best judgment to leave [JOHN DOE] by himself."

101. During this meeting, Head of Schools Washington stated that in light of this incident, KIPP had "course corrected" and would no longer allow students to be left alone as punishment.

102. During this meeting, Head of Schools Washington stated that "this was a series of mess ups" and "this is a series of big mistakes."

103. As a result of being left alone in a classroom unattended on multiple occasions, JOHN DOE is scared to go to school.

104. As a result of being left alone in a classroom unattended on multiple occasions, JOHN DOE does not want to go to school.

105. As a direct and proximate result of the aforementioned acts of KIPP Employees, including DEFENDANT MCDAVID, JOHN DOE was caused to suffer mental anguish both now and in the future.

106. As a direct and proximate result of the aforementioned acts of KIPP Employees, including DEFENDANT MCDAVID, JOHN DOE was caused to suffer emotional injuries both now and in the future.

107. On February 22, 2024, another KIPP student (the "Student") gave several KIPP students, including JOHN DOE, marijuana edibles that resembled rice crispy treats while in a classroom at KIPP under the supervision of a teacher.

108. The Student had a history of misconduct at KIPP.

109. The KIPP teacher allowed the Student to distribute the rice crispy treats to the class.

110. JOHN DOE did not know that he was consuming a marijuana edible when he ate the rice crispy treat.

111. JOHN DOE had never consumed, smoked, or interacted with marijuana prior to consuming the edibles.

112. As a result of eating the edibles, JOHN DOE became extremely intoxicated while at KIPP during the school day.

113. As a result of eating the edibles, JOHN DOE could not walk.

114. As a result of eating the edibles, JOHN DOE could not speak.

115. As a result of eating the edibles, several other KIPP students became extremely intoxicated while at KIPP.

116. As a result of eating the edibles, more than five KIPP students became extremely intoxicated while at KIPP.

117. As a result of eating the edibles, more than ten KIPP students became extremely intoxicated while at KIPP.

118. KIPP, through its employees, responded to the incident by secluding JOHN DOE and several other students in a classroom.

119. KIPP, through its employees, responded to the incident by secluding JOHN DOE and several other students in a classroom for several hours.

120. KIPP, through its employees, did not provide JOHN DOE with any medical care.

121. KIPP, through its employees, did not call an ambulance for JOHN DOE.

122. KIPP, through its employees, did not transport JOHN DOE to a hospital.

123. When MS. CAGE arrived to KIPP to pick up JOHN DOE on February 22, 2024, she observed that he urgently needed medical assistance.

124. MS. CAGE called an ambulance for JOHN DOE, which transported him to West Suburban Hospital.

125. Doctors at West Suburban Hospital diagnosed JOHN DOE with poisoning.

126. MS. CAGE accrued substantial medical bills for his hospital visit and ambulance ride.

127. As a result of being poisoned at KIPP and receiving no medical assistance, JOHN DOE is scared to go to school.

128. As a result of being poisoned at KIPP and receiving no medical assistance, JOHN DOE does not want to go to school.

129. As a result of being poisoned at KIPP and receiving no medical assistance, JOHN DOE was caused to suffer mental anguish both now and in the future.

130. As a result of being poisoned at KIPP and receiving no medical assistance, JOHN DOE was caused to suffer emotional injuries both now and in the future.

**COUNT I**
**§1983 Fourth Amendment Seizure**
**(DEFENDANT MCDAVID)**

131. PLAINTIFF incorporates herein by reference the allegations set forth in paragraphs 1 through 130.

132. As a Chicago Public School teacher and assistant principal, DEFENDANT MCDAVID is a state actor.

133. On or around October 20, 2023, DEFENDANT MCDAVID detained JOHN DOE in a classroom at DEFENDANT KIPP without lawful authority for an extended period of time.

134. JOHN DOE was not free to leave the classroom due to DEFENDANT MCDAVID's detention.

135. DEFENDANT MCDAVID's conduct as alleged in this Complaint constituted an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution.

136. The actions of DEFENDANT MCDAVID directly and proximately caused PLAINTIFF to suffer, without limitation, pain and suffering, humiliation, emotional distress, and mental anguish.

137. The actions of DEFENDANT MCDAVID were the direct and proximate cause of the injuries that JOHN DOE sustained as a result of DEFENDANT MCDAVID violating PLAINTIFF's constitutional rights, alleged above.

WHEREFORE, the PLAINTIFF demands judgment against DEFENDANT MCDAVID, and such other additional relief as this Court deems equitable and just.

## COUNT II
## 745 ILCS 10/9-102 Claim
## (DEFENDANT KIPP)

138. PLAINTIFF incorporates herein by reference the allegations set forth in paragraphs 1 through 137.

139. DEFENDANT KIPP is the employer of DEFENDANT MCDAVID alleged above.

140. The DEFENDANT MCDAVID, as alleged above, committed the acts under color of law and in scope of employment of DEFENDANT KIPP.

WHEREFORE, should the DEFENDANT MCDAVID be found liable for any of the alleged counts in this case, JOHN DOE demands that, pursuant to 745 ILCS 10/9-102, the DEFENDANT KIPP pay the PLAINTIFF any judgment obtained against the DEFENDANT MCDAVID as a result of this complaint.

## COUNT III
## False Imprisonment
## (DEFENDANT MCDAVID)

141. PLAINTIFF incorporates herein by reference the allegations set forth in paragraphs 1 through 130.

142. DEFENDANT MCDAVID restricted JOHN DOE's movement unreasonably and without probable cause by locking and/or ordering PLAINTIFF to remain in a classroom unattended for several hours.

143. JOHN DOE'S personal freedom was curtailed against his wishes by DEFENDANT MCDAVID.

144. As a result of DEFENDANT MCDAVID'S unlawful conduct, PLAINTIFF suffered and continues to suffer from emotional and psychological injuries, among other damages.

WHEREFORE, the PLAINTIFF demands judgment against DEFENDANT MCDAVID, and such other additional relief as this Court deems equitable and just.

### COUNT IV
### *Respondeat Superior*
### (DEFENDANT KIPP)

145. PLAINTIFF incorporates herein by reference the allegations set forth in paragraphs 1 through 130 and 141 through 144.

146. The state law violations cited herein were committed by DEFENDANT MCDAVID in the scope of his employment with DEFENDANT KIPP

147. As a result of the unlawful actions of DEFENDANT MCDAVID, the JOHN DOE was proximately injured.

148. Thus, DEFENDANT KIPP, as principal, is liable for the actions of its agents (DEFENDANT MCDAVID) under the doctrine of *respondeat superior* for the claims set forth in this action.

WHEREFORE, should DEFENDANT MCDAVID be found liable for any of the state law claims in this cause, the PLAINTIFF demands judgment against DEFENDANT KIPP and such other additional relief as this Court deems equitable and just.

### COUNT V
### Willful and Wanton Conduct
### (DEFENDANT KIPP)

149. PLAINTIFF re-alleges paragraphs 1 through 140 as though fully set forth herein.

150. During the relevant time, JOHN DOE was a student at DEFENDANT KIPP

151. DEFENDANT KIPP agreed to and did undertake to provide for the supervision, care, and safety of students, including JOHN DOE, at the premises of its school.

152. DEFENDANT KIPP had a duty to exercise reasonable care to protect the health and welfare of students, including JOHN DOE, while at school.

153. As such, DEFENDANT KIPP owed a duty of care to JOHN DOE.

154. DEFENDANT KIPP had a duty to refrain from engaging in willful and wanton conduct.

155. DEFENDANT KIPP, through its agents, was aware that JOHN DOE had health conditions and a learning disability that made it dangerous for him to be alone unattended in a classroom for extended periods.

156. DEFENDANT KIPP, through its agents, was aware that JOHN DOE was being left alone unattended in a classroom for extended periods as a form of discipline.

157. Despite being aware that JOHN DOE had health conditions, a learning disability, and was being left alone unattended in a classroom for extended periods, DEFENDANT KIPP failed to take action to stop this from occurring.

158. DEFENDANT KIPP committed willful and wanton conduct when it placed JOHN DOE, a vulnerable minor with pre-existing health conditions and a learning disability, in a position where he could be left alone and unattended in a classroom for an extended period of time.

159. DEFENDANT KIPP acted with a conscious disregard for JOHN DOE's welfare when DEFENDANT KIPP placed JOHN DOE, a vulnerable minor with pre-existing health conditions and a learning disability, in a position where he could be left alone and unattended in a classroom for an extended period of time.

160. DEFENDANT KIPP committed willful and wanton conduct when it failed to implement adequate policies and procedures to protect their students, including JOHN DOE, from being left alone and unattended in a classroom for extended periods of time.

161. DEFENDANT KIPP acted with a conscious disregard for JOHN DOE'S welfare when it failed to implement adequate policies and procedures to protect their students, including JOHN DOE, from being left alone and unattended in a classroom for extended periods of time.

162. The acts/or omissions of DEFENDANT KIPP proximately caused the injuries suffered by JOHN DOE, and JOHN DOE suffered damages.

WHEREFORE, the PLAINTIFF demands judgment against DEFENDANT KIPP, and such other additional relief as this Court deems equitable and just.

## COUNT VI
### Negligent Supervision
### (DEFENDANT KIPP)

163. PLAINTIFF incorporates herein by reference the allegations set forth in paragraphs 1 through 140.

164. During the relevant time, JOHN DOE was a student at DEFENDANT KIPP.

165. DEFENDANT KIPP agreed to and did undertake to provide for the supervision, care, and safety of students, including JOHN DOE, while at school.

166. DEFENDANT KIPP had a duty to exercise reasonable care to protect the health and welfare of students, including JOHN DOE while at school.

167. As such, DEFENDANT KIPP owed a duty of care to JOHN DOE.

168. DEFENDANT KIPP, through its agents, was aware that employees were leaving JOHN DOE alone and unattended in a classroom as a form of punishment despite JOHN DOE having pre-existing health conditions.

169. DEFENDANT KIPP, through its agents, was aware that DEFENDANT MCDAVID was leaving JOHN DOE alone and unattended in a classroom as a form of punishment despite JOHN DOE having pre-existing health conditions.

170. Despite being aware that employees were leaving JOHN DOE alone and unattended in a classroom as a form of punishment despite JOHN DOE having pre-existing health conditions and a learning disability, DEFENDANT KIPP failed to take action to prevent this from occurring.

171. Despite being aware that aware that DEFENDANT MCDAVID was leaving JOHN DOE alone and unattended in a classroom as a form of punishment despite JOHN DOE having pre-existing health conditions and a learning disability, DEFENDANT KIPP failed to take action to prevent this from occurring.

172. DEFENDANT KIPP breached the duty of care it owed to JOHN DOE by allowing JOHN DOE to be left alone and unattended in a classroom as a form of punishment despite JOHN DOE having pre-existing health conditions.

173. DEFENDANT KIPP breached the duty of care it owed to JOHN DOE by failing to stop its employees from leaving JOHN DOE alone and unattended in a classroom as a form of punishment despite JOHN DOE having pre-existing health conditions.

174. DEFENDANT KIPP breached the duty of care it owed to JOHN DOE by failing to stop DEFENDANT MCDAVID from leaving JOHN DOE alone and unattended in a classroom as a form of punishment despite JOHN DOE having pre-existing health conditions.

175. DEFENDANT KIPP breached the duty of care it owed to JOHN DOE by failing to supervise its employees and/or agents in such a way to allow JOHN DOE to be left alone and unattended in a classroom as a form of punishment despite JOHN DOE having pre-existing health conditions.

176. DEFENDANT KIPP, through its agents, was aware that the Student had a history of misconduct.

177. DEFENDANT KIPP breached the duty of care it owed to JOHN DOE by allowing the Student to pass out marijuana edibles to the class and thereby poison JOHN DOE while he was at school.

178. DEFENDANT KIPP breached the duty of care it owed to JOHN DOE by allowing the Student to pass out marijuana edibles to JOHN DOE even though JOHN DOE had preexisting health conditions and thereby poison JOHN DOE while he was at school.

179. The acts/or omissions of DEFENDANT KIPP proximately caused the injuries suffered by JOHN DOE, and JOHN DOE suffered damages.

19

WHEREFORE, the PLAINTIFF demands judgment against DEFENDANT KIPP, and such other additional relief as this Court deems equitable and just.

**JURY DEMAND**

The PLAINTIFF demands trial by jury.

>
> Respectfully submitted,
>
> THE BLAKE HORWITZ LAW FIRM
> Attorney for Plaintiff
>
> By: ***/s/ Hayden Leonhardt Dinges***
> Hayden L. Dinges
> The Blake Horwitz Law Firm
> 111 W. Washington St., Suite 1611
> Chicago, Illinois 60602
> (312) 676-2100
> hdinges@bhlfattorneys.com